BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 WEST MYRTLE STREET, SUITE 500
BOISE, ID 83702
TELEPHONE: (208) 334-1211
FACSIMILE: (208) 334-1413

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 20-CR-00202-S-DCN |
|---|---|
| Plaintiff, | **RULE 11 PLEA AGREEMENT** |
| vs. | |
| DOUGLAS WOLD, | |
| Defendant. | |

Rev. May 2019

I.  **GUILTY PLEA**

A.  **Summary of Terms.**  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the Defendant, and the Government[1] agree that the Defendant will plead guilty to Count One, Count Twelve, and Count Thirteen of the Indictment, which charges the Defendant with wire fraud, mail fraud, and engaging in monetary transactions in property derived from specified unlawful activity, respectively.  The Defendant also agrees to admit to the forfeiture allegations in the Indictment.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this Agreement.  Upon acceptance of the Defendant's guilty plea, and the Defendant's full compliance with the other terms of this Agreement, the Government, under Federal Rule of Criminal Procedure 11(c)(1)(A), will dismiss the remaining counts in the Indictment, and under Federal Rule of Criminal Procedure 11(c)(1)(B), will recommend a sentence within the United States Sentencing Commission Guidelines Manual ("U.S.S.G.") guidelines range as determined by the Court.

B.  **Oath.**  The Defendant will be placed under oath at the plea hearing.  The Government may use any statement that the Defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

II.  **WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL**

The Defendant waives the following rights by pleading guilty pursuant to this Agreement: 1) the right to plead not guilty to the offense charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3)

---

[1] The word "Government" in this Agreement refers to the United States Attorney for the District of Idaho.

the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant. If the Court accepts the Defendant's guilty plea, there will be no trial.

### III.   NATURE OF THE CHARGES

**A.**   **Elements of the Crime.**   The elements of the crime of wire fraud, in violation of 18 U.S.C § 1343, as charged in Count One, are as follows:

1. First, the defendant knowingly participated in, devised, intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

4. Fourth, the defendant used, or caused to be used, the interstate wires to carry out or attempt to carry out an essential part of the scheme.

The elements of the crime of mail fraud, in violation of 18 U.S.C § 1341, as charged in Count Twelve, are as follows:

1. First, the defendant knowingly participated in, devised, intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

  2. Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

  3. Third, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

  4. Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

The elements of the crime of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C § 1957, as charged in Count Thirteen, are as follows:

  1. First, the defendant knowingly engaged or attempted to engage in a monetary transaction;

  2. Second, the defendant knew the transaction involved criminally derived property;

  3. Third, the property had a value greater than $10,000;

  4. Fourth, the property was, in fact, derived from wire fraud/mail fraud; and

  5. Fifth, the transaction occurred in the United States.

  **B.** **Factual Basis.**  The Defendant admits the following facts are true:

The Defendant, a resident of Meridian, Idaho, was a Human Resources Manager at Fry Foods in Ontario, Oregon. In 2020, he engaged in two schemes to defraud his employer and others.

With respect to Count One, the Defendant committed wire fraud with respect to Fry Foods' payroll, which he had a role in processing each month. The Defendant engaged in a scheme to defraud Fry Foods and to obtain money for himself by submitting false and fraudulent

**Plea Agreement**             3             Rev. May 2019

payroll requests to Fry Foods' accounting firm. These requests were material misrepresentations because they showed that Fry Foods owed wages to individuals who never worked at Fry Foods or no longer worked at Fry Foods at the time of the requests. Knowing this, the Defendant caused Fry Foods' accounting firm to issue checks in the names of these individuals. The Defendant then deposited the false payroll checks into his own bank accounts in Meridian, Idaho using a mobile deposit service provided by his Idaho bank. Each mobile deposit caused interstate wire communications to and from the Defendant's Idaho bank. Count One is the May 20, 2020 mobile deposit of a check made out to L.E.A. in the amount of $1,003.11 that the Defendant deposited into his Wake Plates LLC bank account in Meridian, Idaho. In doing all this, the Defendant acted with intent to defraud.

With respect to Count Twelve, the Defendant committed mail fraud with respect to a Covid-19 testing program at Fry Foods Weiser, Idaho location. The Defendant engaged in a scheme to defraud and to obtain money for himself by arranging for Fry Foods to pay his company, Hala Lallo Health, for Covid-19 testing that another company actually conducted. The Defendant made material misrepresentations to Fry Foods by providing a false and fraudulent invoice that indicated that Fry Foods owed $39,995.00 to Hala Lallo Health for the testing when, in fact, Hala Lallo Health had no true role in providing the testing and another company did so for a greatly lower price. Fry Foods sent by U.S. mail the check for the invoice of $39,995.00 to Hala Lallo Health in Meridian, Idaho and the Defendant deposited the check into a bank account he controlled, while the company that actually provided the testing was not paid. In doing all this, the Defendant acted with the intent to defraud.

With respect to Count Thirteen, the Defendant engaged in a monetary transaction in property derived from his schemes described with respect to Counts One and Twelve. The Defendant purchased the speedboat and trailer identified in the Indictment and in the forfeiture

section of this Plea Agreement through an interstate wire transfer within the United States of $69,116.48, The Defendant knew that this money was derived from criminal activity—specifically the wire fraud scheme described with respect to Count One and the mail fraud scheme described with respect to Count Twelve.

The Defendant transferred proceeds of his schemes through various bank accounts that he controlled, including those listed below in the forfeiture section. The Defendant admits that the full balances in the accounts listed in the forfeiture section are proceeds of the wire and mail fraud schemes described previously and are derived from the proceeds of those schemes. The Defendant also admits that the boat and trailer listed in the forfeiture section are derived from proceeds of his schemes and were involved in a money laundering transaction because the defendant spent more than $10,000 of criminally-derived proceeds to purchase the boat and trailer. The Defendant agrees to forfeiture of these proceeds and assets.

## IV. SENTENCING FACTORS

**A.     Penalties.** The crimes of wire and mail fraud, as charged in Counts One and Twelve, respectively, are punishable by:

1. a term of imprisonment of up to 20 years;
2. a term of supervised release of not more than 3 years;
3. a maximum fine of $250,000, and a special assessment of $100.

The crime of engaging in monetary transactions in property derived from specified unlawful activity, as charged in Count Thirteen, is punishable by:

1. a term of imprisonment of up to 10 years;
2. a term of supervised release of not more than 3 years;
3. a maximum fine of $250,000, and a special assessment of $100.

      **B.**    <u>**Supervised Release.**</u>  The Court may impose a period of supervised release.  No Agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the Defendant is pleading guilty.  Violation of any condition of supervised release may result in further penalties and prosecution.

      **C.**    <u>**Fines and Costs.**</u>  The Court may impose a fine.  No agreement exists as to its amount of the fine.  The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

      **D.**    <u>**Special Assessment.**</u>  The Defendant will pay the special assessment before sentencing and will furnish a receipt at sentencing.  Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 550 West Fort Street, Fourth Floor
> Boise, Idaho 83724

      **E.**    <u>**Restitution.**</u>  In addition to paying any fine and costs imposed, the Defendant also agrees to pay, and be ordered to pay, restitution equal to the amount of loss suffered by any person or victim related to the criminal conducted described herein and set forth in the Indictment, which shall be determined by the Court at sentencing.  Because the Defendant engaged in a scheme to defraud, all victims and others suffering pecuniary loss from the scheme shall be considered victims and entitled to restitution ordered by the Court for such loss.  The Defendant agrees that all monetary penalties imposed by the Court, including restitution, will be due immediately and can immediately be enforced by the Government (whether through 18 U.S.C. § 3613 or otherwise).  The Defendant agrees that the payment schedule or plan is neither the only method, nor a limitation on the methods, available for enforcing the judgment.  It is simply a schedule or plan for minimum payments.  The Defendant is aware that voluntary

payment of restitution prior to adjudication of guilt is a factor the Court can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

**F.     Forfeiture.** The Court will enter a forfeiture order as part of the Defendant's sentence.

The Defendant agrees to forfeit the following:

1.     Identified Property. Proceeds and funds derived from proceeds in various bank accounts, including the following (amounts are approximate and at least):

- Banner Bank account ending in 7922 for Wake Plates LLC containing $6,230.34;
- Banner Bank account ending in 9315 for Douglas Arnold Wold d/b/a Hala Lallo Health containing $14,152.44;
- Banner Bank account ending in 1328 for Douglas Arnold Wold d/b/a Wake Plate Design containing $863.10;
- Banner Bank account ending in 6223 for K.A.M.W. and Douglas Arnold Wold containing $9,151,17;
- Banner Bank account ending in 6321 for T.R.M.W. and Douglas Arnold Wold containing $7,800.03;
- Banner Bank account ending in 6528 for K.J.M.W. and Douglas Arnold Wold containing $7,577.12;
- 2019 Tige' R23 Speedboat, Hull Identification Number TIX0242SD919; and
- 2019 Boatmate Boat Trailer, Vehicle Identification Number 5A7BB2322KT000147.

The Defendant agrees that the speedboat and trailer also constitute property involved in the money laundering offense, Count Thirteen.

2.     Unrecovered Cash Proceeds and/or Facilitating Property. Proceeds of the offense of conviction, or property derived from or traceable to such proceeds, and property the defendant used to facilitate the offense, but based upon actions of the Defendant, the property was transferred, diminished, comingled, or is otherwise unavailable.

3. <u>Substitute Assets Up To the Value of Unrecovered Property Subject to Forfeiture</u>. Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the Defendant agrees to forfeit substitute assets, or any other property of the Defendant up to the value of any unrecovered property subject to forfeiture. Post-sentencing forfeiture of substitute assets does not entitle the Defendant to resentencing.

Defendant makes the following additional agreements and waivers related to forfeiture.

Regarding the above property, the Defendant: (a) is the sole owner, unless otherwise set out herein; (b) hereby withdraws any claims filed in any administrative or civil forfeiture proceeding; (c) agrees to assist fully in the forfeiture and to take all steps necessary to pass clear title to the Government; (d) will testify truthfully in any forfeiture proceeding and will not assist a third party in asserting a claim; (e) agrees to administrative or civil forfeiture, or abandonment, if the Government does not pursue criminal forfeiture; and (f) agrees that variations or errors in serial numbers or property descriptions shall not affect forfeiture.

Forfeiture is separate from all other penalties, including fines and restitution. As with other penalties, the Court will determine forfeiture at sentencing. Any stated or pleaded forfeiture amount is an "at least" amount and the Court may impose greater or additional forfeitures. The Defendant waives requirements regarding notice and pronouncement of forfeiture, including: (a) in charging documents, (b) at the change of plea hearing, (c) at sentencing, and (d) in the judgment. *See* Fed. R. Crim. P. 11(b)(1)(J), 32.2, and 43(a).

The Defendant waives all challenges and objections, on any grounds, to any forfeiture in accordance with this agreement. If this agreement is withdrawn for any reason, the Defendant waives the right to contest all administrative and civil forfeitures that began before the withdrawal. The Defendant agrees to hold the United States, its agents, and employees harmless from any claims related to seizures or forfeiture in this case or the related investigation. The

**Plea Agreement** 8 Rev. May 2019

forfeiture provisions of this agreement will survive the Defendant's death and bind the Defendant's heirs, successors and assigns until forfeiture is fully collected. Any forfeited property directed to victims shall not be returned even if Defendant's conviction is overturned or abated.

The District Court shall retain jurisdiction to consider and rule on forfeiture and related issues, unless a higher Court directs otherwise.

**V.  SEIZED PROPERTY: ABANDONMENT AND WAIVER**

The Defendant abandons, releases, and waives any interest in property seized or otherwise obtained by the Government or law enforcement in this case unless specific exceptions are noted in this agreement. Such property will be disposed of, destroyed, sold, or transferred in the Government's sole discretion. Such disposition shall not constitute satisfaction of any assessment, fine, restitution, forfeiture, cost of imprisonment, or any other penalty that this Court may impose.

**VI.  UNITED STATES SENTENCING GUIDELINES**

    **A.**    <u>**Application of Sentencing Guidelines.**</u>  The Court must consider the U.S.S.G. in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G. § 1B1.3.

The Court is not a party to this Agreement and the Agreement does not bind the Court's determination of the U.S.S.G. range. The Court will identify the factors that will determine the sentencing range under the U.S.S.G. The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

Recognizing that this Agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

B.   **Sentencing Guidelines Recommendations and Requests.**

1.   Government's Statements at Sentencing. The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation. The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the Agreement or the pre-sentence investigation report contain this information. Any exception must be specified in this Agreement.

2.   Loss Amount. The parties agree that that the loss amount in this case for purposes of the guidelines calculation is $155,331,25.

3.   Abuse of Position of Abuse of Trust. The parties agree that two-level enhancement under U.S.S.G. § 3B1.3 for abuse of a position of trust applies.

4.   No Sophisticated Means. The Government agrees that the two-level enhancement under U.S.S.G. § 2B1.1(b)(10) does not apply.

5.   Not Ten or More Victims. The Government agrees that the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A) for an offense involving 10 or more victims does not apply.

6.   Acceptance of Responsibility. If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the

Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

7. <u>Downward Departure or Variance Request by Defendant</u>. The Defendant will not seek a downward departure or variance under 18 U.S.C. § 3553(a), without first notifying the Government of the Defendant's intent to seek a downward departure and the Defendant's reasons and basis therefor, such notice to be provided not less than 21 days before the date set for sentencing.

## VII. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A. **Waiver:** In exchange for this Agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution. This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this Agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this Agreement, the Defendant will object at the time of sentencing; further objections are waived.

B. **Exceptions:**

1. **Direct Appeal:** Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

    a. the sentence imposed by the Court exceeds the statutory maximum;

  b. the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

  c. the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this Agreement completely waives all appellate rights.

  2. **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government. Failure to execute releases or to provide information for the pre-sentence investigation report violates this Agreement and relieves the Government of its obligations from it. Such failure by the Defendant and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX. DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has had any financial interest. This includes all community property. The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government. The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this

Agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later. The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government: (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant. Before sentencing, Defendant agrees not to dissipate any assets without the consent of both the Government's financial litigation unit and asset forfeiture unit. If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

**X.     NO RIGHT TO WITHDRAW PLEA**

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this Agreement or the guilty plea, regardless of the Court's actions.

**XI.    CONSEQUENCES OF VIOLATING AGREEMENT**

**A.     <u>Government's Options.</u>** If the Defendant fails to keep any promise in this Agreement or commits a new crime, the Government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this Agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this Agreement. Such charges may be brought without prior notice. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this Agreement in its entirety. In

addition, if the Government determines after sentence is imposed that the Defendant's breach of the Agreement warrants further prosecution, the Government may choose between letting the conviction under this Agreement stand or vacating such conviction so that charge may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea made pursuant to this Agreement.

    **B.**    **Defendant's Waiver of Rights.**  If the Defendant fails to keep any promise made in this Agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense to which the Defendant entered a plea of guilty or which were dismissed under this Agreement. In addition, for any charge that is brought as a result of the Defendant's failure to keep this Agreement, the Defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII. MISCELLANEOUS

    **A.**    **No Other Terms.**  This Agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant. This Agreement does not prevent any Governmental agency from pursuing civil or administrative actions against the Defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this Agreement does

not bind or obligate Governmental entities other than that specified as the Government in this Agreement (i.e., the United States Attorney's Office for the District of Idaho).

**B.** **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the Defendant's notification of acceptance of this Agreement no later than 5:00 p.m. on April 2, 2021.

## XIII. UNITED STATES' APPROVAL

I have reviewed this matter and the Agreement. This Agreement constitutes a formal plea offer from the Government. Any oral discussions with the Defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this Agreement is no longer a valid offer by the Government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____          _____4/1/21_____
JOSHUA D. HURWIT                                         Date
Assistant United States Attorney

## XIV. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read this Agreement and have carefully reviewed every part of this Agreement with my attorney. I understand the Agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this Agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this Agreement is no longer valid and is

**Plea Agreement**　　　　　　　　　　　　　15　　　　　　　　　　　　　Rev. May 2019

rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____    3/29/2021
DOUGLAS WOLD                        Date
Defendant

I have read this Agreement and have discussed the contents of the Agreement with my client. This document accurately sets forth the entirety of the Agreement. I have conveyed all written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct. 1399, 1408-09 (2012). I understand that this Agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this Agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States. I concur in my client's decision to plead guilty as set forth above.

_____    3/29/21
NICOLE OWENS                        Date
Attorney for the Defendant